## MIDCOAST DISPOSAL, INC.

v.

## TOWN OF UNION.

Supreme Judicial Court of Maine.

Argued Jan. 12, 1988.

Decided Feb. 23, 1988.

Edith A. Richardson (orally), Rudman & Winchell, Bangor, for plaintiff.

James W. Strong (orally), Strout, Payson, Pellicani, Hokkanen, Strong, & Levine, Rockland, for defendant.

Before McKUSICK, C.J., and NICHOLS, ROBERTS, WATHEN, GLASSMAN and CLIFFORD, JJ.

McKUSICK, Chief Justice.

Defendant Town of Union appeals a judgment entered by the Superior Court (Knox County) declaring that the Town had exceeded its home rule authority by enacting ordinances that prohibited private companies such as plaintiff Midcoast Disposal, Inc. (Midcoast) from locating and operating within Union disposal facilities that would receive out-of-town solid waste. The court held that by enacting the Maine Hazardous Waste, Septage and Solid Waste Management Act,[1] 38 M.R.S.A. §§ 1301 to 1310–B (1978 & Pamph.1986), the legislature preempted the Town from adopting the ordinances at issue here. We agree.

The Town adopted its disputed solid waste disposal ordinance and land use ordinance on February 13, 1984, and March 11, 1985, respectively. Prior to the first date, Midcoast had undertaken the planning of a solid waste disposal facility to be built on land in Union on which it held an option. Midcoast later exercised that option. Midcoast planned to receive at its facility in Union solid waste from outside sources. Contending that the ordinances barred it from continuing with its planned disposal facility, Midcoast asked the Superior Court to declare that the Solid Waste Management Act preempted the Town's authority to enact four provisions in its ordinances. In the Town's solid waste disposal ordinance, Midcoast objected to the following provisions:

Land which has been designated by the Town Selectmen for the disposal of Solid Waste for the Town of Union shall be referred to as Solid Waste Disposal Area. The Town of Union Dump will serve as the Solid Waste Disposal Area at this time.... (Article I, section 3.7).

The Municipal Officers shall designate a Solid Waste Disposal Area for the dumping and depositing of solid waste, and the dumping and depositing of any solid waste at any other place than at such designated Solid Waste Disposal Area is prohibited.... (Article II, section 1).

No person, firm, corporation, or other legal entity shall deposit, or cause or permit to be deposited, any solid waste matter in any structure or in, on, or under any land within the Town of Union which solid waste matter originates, or is collected, or is in any way gathered or assembled from outside the Town of Union. (Article II, section 5.1).

In the Town's land use ordinance, Midcoast objected to section 15(A): "No land may be used for refuse disposal facilities except by the Town of Union." The Superior Court entered judgment in favor of Midcoast, holding that the legislature had preempted the Town's authority to enact all the quoted provisions except article I, section 3.7. The Town then appealed that decision.

Maine's home rule statute declares the authority of municipalities to exercise "any power or function which the Legislature has power to confer upon [them], which is not denied either expressly or by clear implication, and [to] exercise any power or function granted to the municipalit[ies] by the Constitution, general law or charter." 30 M.R.S.A. § 1917 (1978).[2] Furthermore, "[i]f the legislature intended to create a comprehensive and exclusive regulatory scheme, then [a] municipal ordinance [at odds with that scheme] must fail as a violation of the Home Rule statute." *Tisei v. Town of Ogunquit*, 491 A.2d 564, 570 (Me. 1985). *See also Ullis v. Town of Boothbay Harbor*, 459 A.2d 153, 159 (Me.1983). The Superior Court, assessing the Solid Waste

---

1. Hereinafter referred to as the Act or the Solid Waste Management Act.

2. Since the Town did not raise until its reply brief the argument that 30 M.R.S.A. § 1917 violates the home rule provision of article VIII, part second, section 1 of the Maine Constitution, we do not address the issue here. *See Darling v. Augusta Mental Health Institute*, 535 A.2d 421, 423 n. 1 (Me.1987).

Management Act in its form prior to a subsequent amendment,[3] correctly concluded that the Act presented just such a "comprehensive and exclusive regulatory scheme," and therefore by clear implication denied a municipality the authority to prohibit the establishment of privately owned facilities for the deposit of out-of-town solid waste.

In the declaration of policy contained in the Solid Waste Management Act, the legislature stated that an "economic, efficient and environmentally sound method of waste disposal is of the highest priority," and then identified as presenting the primary problem the Act sought to overcome that "[m]unicipalities and other persons are generating increasing amounts of ... solid waste with no systematic or consistent methods being used to reduce the volume of waste or to soundly dispose of it." 38 M.R.S.A. § 1302 (Pamph.1986). The Act went on to declare that its central purpose is to encourage the safe and efficient development of "public or private" solid waste programs that reduce the actual volume of solid waste generated and increase the quantity of waste that is recycled and reused in a safe manner. *Id.*

The scheme established by the Act for advancing those ends included authorization for the Board of Environmental Protection (BEP) to "adopt, amend and enforce rules as it deems necessary to govern waste management, including the location, establishment, construction and alteration of waste facilities." *Id.* § 1304(1). The Act also granted the BEP authority to license public or private waste facilities, after determining that the facility "will not pollute any water of the State, contaminate the ambient air, constitute a hazard to health or welfare, or create a nuisance." *Id.* § 1304(8)(A). The Act sought to promote regional solid waste disposal facilities by authorizing interlocal municipal agreements with public or private operators of disposal facilities. *Id.* § 1304–B(4)–(5). Finally, although the Act provided that municipalities shall retain their authority to regulate solid waste disposal facilities, those regulations may not be "less stringent than or inconsistent with" the Act itself or regulations adopted under the Act. *Id.* § 1304–B(3). These provisions together support the Superior Court's conclusion that the Solid Waste Management Act, by its "comprehensive and exclusive regulatory scheme," *Tisei v. Town of Ogunquit*, 491 A.2d at 570, manifested a clear legislative intention to remove any authority a municipality may have had to prohibit the establishment and operation of a private facility within its borders for the disposal of out-of-town solid waste.[4]

We affirm the Superior Court's declaration that the enactment of article II, sections 1 and 5.1 of the Town's solid waste disposal ordinance exceeded the Town's home rule authority to the extent that those sections prohibit the disposal at privately owned facilities within Union of solid waste generated beyond its borders.[5] Furthermore, section 15(A) of the Town's land use ordinance must equally fail, since by requiring that "[n]o land may be used for refuse disposal facilities except by the Town of Union," that section in essence accomplishes the same improper purpose as the other *ultra vires* provisions of the solid waste disposal ordinance. *See Ullis v. Town of Boothbay Harbor*, 459 A.2d at 160.

The entry is:

Judgment affirmed.

All concurring.

---

3. The legislature amended the Solid Waste Management Act in P.L.1987, ch. 517, effective June 29, 1987, just five days after the Superior Court issued its opinion in this case.

4. The Act does, however, recognize that municipalities have "legal authority to control the handling of solid waste generated *within* their borders." 38 M.R.S.A. § 1304–B(1) (Pamph.1986; Pamph.1987) (emphasis added). The Superior Court therefore properly found no infirmity in article I, section 3.7 of the Town's solid waste disposal ordinance, which granted the selectmen authority to designate a site for the disposal of the locally generated solid waste.

5. The 1987 amendment of the Act only serves to confirm the Superior Court's conclusion. *See* 38 M.R.S.A. §§ 1302–1319 (Pamph.1987) (enacted by P.L.1987, ch. 517) (eff. June 29, 1987).